IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Jonathan Barger, *et al.*, | : | Case No. 1:17-cv-77 |
| | : | |
| Plaintiffs, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | |
| United Brotherhood of Carpenters and | : | Order |
| Joiners of America, *et al.*, | : | |
| | : | |
| Defendants. | : | |

This matter is before the Court on Defendant Dynegy, Inc.'s Motion to Dismiss
Plaintiffs' Third Amended Complaint (Doc. 43), Defendant Brotherhood of Carpenter and
Joiners of America's Motion to Dismiss Verified Third Amended Complaint (Doc. 45),
Defendant Solid Platforms, Inc.'s Motion to Dismiss (Doc. 46), Defendant
Indiana/Kentucky/Ohio Regional Council of Carpenter's Motion to Dismiss Causes of Action I,
II, III and IV of the Third Amended Complaint (Doc. 47), and Defendant Local Union 2, United
Brotherhood of Carpenters and Joiners of America's Motion to Dismiss Causes of Action I-IV
and VI-VIII of the Third Amended Complaint (Doc. 68).  Plaintiffs have also filed a Motion for
Leave to File a Modified Third Amended Complaint Withdrawing Counts Six and Eight of the
Third Amended Complaint.  (Doc. 65.)   Local 2, in turn, filed an Unopposed Motion for
Extension of Time to Move or Plead (Doc. 66).

For the reasons that follow, Dynegy, Inc.'s Motion (Doc. 43), Brotherhood of Carpenter
and Joiners of America's Motion (Doc. 45), and Indiana/Kentucky/Ohio Regional Council of
Carpenter's Motion (Doc. 47), and Local Union 2, United Brotherhood of Carpenters and Joiners
of America's Motion (Doc. 68) are each granted in part and denied in part.  Defendant Solid

Platforms, Inc.'s Motion to Dismiss (Doc. 46) is granted. The Motion for Leave to File a Modified Third Amended Complaint (Doc. 65) is granted, and the Motion for Extension of Time (Doc. 66) is denied as moot.

## I.  BACKGROUND[1]

### A.  Facts

Plaintiffs brother and sister Jonathan Barger and Charlotte Nealan are members of Defendant Local 2 ("Local 2") of Defendant United Brotherhood of Carpenters and Joiners of America (the "Union").[2]  (Doc. 41 at PageID 360, ¶¶ 1–3.)  From 2007 to 2015, Barger was employed by Defendant Solid Platforms, Inc. ("Solid Platforms"), which is a union contractor that performs general carpentry and scaffolding services.  (*Id.* at ¶ 4.)  Nealan was employed by Solid Platforms for "most of that same time."  (*Id.* at ¶ 5.)

Though Plaintiffs were members of the Union, Solid Platforms was not required by any collective bargaining agreement to have "cause" to terminate their employment, and no grievance procedure was available to them in the event of such termination.  (*Id.* at ¶ 8.)  Barger and Nealan's employment was thus "at will."  (*Id.* at ¶ 9.)

Pursuant to a contract with Defendant Dynegy Administrative Services Company ("Dynegy"), Solid Platforms performed scaffolding services at the Zimmer Power Station ("Zimmer") near Moscow, Ohio.  (*Id.* at ¶ 10.)  Most of Barger's work for Solid Platforms was performed at Zimmer.  (*Id.* at ¶ 11.)  Nealan worked at multiple locations for Solid Platforms, including "multiple tenures of employment at Zimmer."  (*Id.* at PageID 360–61, ¶ 12.)

---

[1] Presumed to be true for purposes of the pending Motion, the Court has drawn background facts from Plaintiff's Third Amended Complaint.  (Doc. 41.)

[2] Barger has been a member for seventeen years, and Nealan has been a member since 1999.  (Id. at ¶¶ 1–2.)

In 2012, while working for Solid Platforms, Nealan observed "numerous instances of Solid Platforms' employees" – including employees Art Galea III and Daniel Jason Hall – "charging Dynegy, or its related or predecessor company, for hours they did not work." (*Id*. at PageID 361, ¶ 13.) All of the Solid Platforms employees Nelean observed engaging in this "fraudulent activity" were members of the Union. (*Id*. at ¶ 14.) Nelean told Barger about what she observed in the spring or summer of 2012. (*Id*. at ¶ 15.) In turn, Barger "made observations supporting what his sister had told him." (*Id*. at ¶ 16.)

In the fall of 2013, Barger informed Kipp Kahlenbeck, who was both a Project Manager for Solid Platforms at Zimmer and member of the Union, that he believed that Solid Platforms had been falsely reporting to Dynegy the number of hours worked by its employees. (*Id*. at ¶ 17.) Kahlenbeck told Barger that he would investigate, although Barger never heard anything about the issue thereafter. (*Id*. at ¶ 18.) Subsequently, "additional information came to [Barger's] attention about the padding of hours by his fellow union members, including information indicating that Kahlenbeck himself was involved." (*Id*. at ¶19.) Barger was "increasingly concerned by these activities because they were dishonest, and because they involved fraud against a public utility company, and thus could adversely affect the public." (*Id*. at ¶ 20.)

On October 27, 2015, while on a temporary layoff from Solid Platforms, Barger had a phone conversation with a Dynegy manager named Joe Lind, during which Barger "spoke up about the falsification of hours he believed union members at Solid Platforms had been engaged in, and the resulting overcharges to Dynegy." (*Id*. at PageID 362, ¶ 22.) Barger reported that Galea, Hall, and Kahlenbeck had been improperly padding hours on behalf of Solid Platforms. (*Id*. at ¶ 23.) Lind told Galea, Kahlenbeck, and Hall about the statements Barger made, who, upon information and belief, then told Dave Meier, business agent for the Union and a member

of Local 2. (*Id*. at ¶ 24–25.) On October 29, 2015, Barger reported the same allegations to Meier and his position that if the Union was going to engage in this type of behavior, he did not want to be a part of it. (*Id*. at ¶ 26.)

On October 30, 2015, Meier filed charges against Barger with Defendant Indiana/Kentucky/Ohio Regional Council of Carpenters ("IKORCC"), which is an affiliate and agent of the Union and responsible for adjudicating charges. (*Id*. at ¶¶ 27–29.) Meier alleged Barger intended to slander the Union members by the statements made to Lind. (*Id*. at PageID 363, ¶ 28.) He claimed Barger caused dissention and was failing to be respectful to his fellow Union members. (*Id*.)

On May 11, 2016, the IKORCC conducted a trial on the charges before a Trial Committee of the IKORCC, which found Barger guilty and recommended that fines totaling $5,000 be imposed against him. (*Id*. at ¶¶ 33–35.) On August 2, 2016, the IKORCC accepted the recommendation of the Trial Committee, imposed the fines, and informed Barger that his failure to pay the fines within 30 days would result in his ceasing to be a member in good standing of the Union, which in turn would cause him to forfeit his retirement benefits. (*Id*. at ¶¶ 36–37.)

Barger appealed the decision to the Union. (*Id*. at ¶ 38.) He also filed three grievances with the Union regarding the charges against him and the failure of Local 2 to assign him work after his complaints. (*Id*. at PageID 364, ¶ 39.) The Union denied the grievances and failed to act on the appeal of the IKORCC's decision for months. (*Id*. at ¶ 40.) The Union issued a ruling after initiation of this lawsuit reversing the Council's decision "solely on technical grounds." (*Id*. at ¶ 43.) Defendant Solid Platforms has refused to call Barger back to work any time after

his October 25, 2015 layoff, and Local 2, "with only brief and rare exceptions," also refuses to offer work to Barger. (*Id*. at ¶ 44.)

In November 2015, Barger obtained a new job with ESS, which assigned him to work at Zimmer. (*Id*. at PageID 365, ¶ 47.) Prior to arriving to work the first day, Barger told a representative of Solid Platforms that he would be at Zimmer the following Saturday. (*Id*. at ¶ 49.) Yet, when he arrived for work on November 21, 2015, identified himself as an employee of ESS, and sought admission to the site to perform his work, a representative of Dynegy refused to allow him to enter. (*Id*. at ¶ 50.) On November 23 or 24, 2015, Barger told Lind about his being denied entry to Zimmer, and Lind confirmed he was not allowed on the site "because of Solid Platforms." (*Id*. at ¶ 51.) In late 2016, Lind told Barger that he was still barred from Zimmer "because of Solid Platforms." (*Id*. at ¶ 53.)

In November 2015, Nealan was working for Solid Platforms at Zimmer and had been regularly offered employment by the Union through Local 2. (*Id*. at PageID 366, ¶ 56–58.) For approximately the past eight to nine years, the majority of the work offered to her had been with Solid Platforms. (*Id*. at ¶ 57.) After Barger reported the alleged corruption, Solid Platforms "laid her off from her position at Zimmer, and it has never recalled her to work since." (*Id*. at ¶ 58.) Local 2 has offered her little work since November 2015. (*Id*. at ¶ 59.) On April 24, 2017, Nealan was offered work for Solid Platforms for the first time since November 2015, but when she arrived for orientation, she was told by a Solid Platforms representative that she could not go to work because she was on a "do not hire list." (*Id*. at ¶ 61.) Upon information and belief, both Nealan and Barger were placed on "do not hire" lists by Local 2, and as a result, have received almost no work since November 2015. (*Id*. at PageID 366–37, ¶ 61–62.)

## B. Procedural History

On February 3, 2017, Barger initiated this action against the Union, IKORCC, Solid

Platforms, and Dynegy. (Doc. 1.) The Court has since granted Plaintiff(s) leave to amend the

Complaint three times.[3] In their current Third Amended Complaint, Plaintiffs allege the

following causes of action:

(1) Violation of Barger's right to free speech under Section 101(a)(2) of the Labor
Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §
411(a)(2) by Local 2, the Union, and IKORCC;
(2) Conspiracy to retaliate against Barger for the exercise of his free speech rights
in violation of the LMRDA by Local 2, the Union, and IKORCC;
(3) Tortious interference with Barger's employment relationship with Solid
Platforms by Local 2, the Union, and IKORCC;
(4) Tortious interference with Barger's employment relationship with ESS and
other prospective employers by Dynegy, the Union, IKORCC, Local 2, and
Solid Platforms;
(5) Wrongful discharge in violation of Ohio public policy by Solid Platforms
against Barger for its failure to employ him and refusing to recall him to work
because he exposed theft, falsification of records, fraud, and padding of hours;
(6) Violation of Nealan's rights under Section 101(a)(5) of the LMRDA by Local
2;
(7) Tortious interference with Nealan's employment relationship with Solid
Platforms and prospective employers by Local 2; and
(8) Violation of Nealan's rights under the LMRDA by retaliating against her for
her brother's exercise of rights under the LMRDA by Local 2.

On August 1, 2017, Dynegy, the Union, Solid Platforms, and IKORCC each filed

Motions to Dismiss. (Docs. 43, 45–47.) On October 20, 2017, Plaintiffs filed a Motion for

Leave to File Their Fourth Amended Complaint For the Purpose of Withdrawing Two Claims.

(Doc. 65.) In support of their Motion, Plaintiffs stated that they were mindful of the Court's

directive that no further amendment to the Complaint would be granted, but since that time, had

---

[3] On April 10, 2017, Barger filed an Amended Complaint as a matter of course. (Doc.10.) On May 16, 2017, the
Court granted leave to Barger to file as Second Amended Complaint to add Nealan as a Plaintiff and Local 2 as a
Defendant. (Doc. 28.) On June 22, 2017, the Court granted Plaintiffs leave to file a Third Amended Complaint, and
on July 17, 2017, the Court granted leave to file his "third and final amended complaint." (June 22, 2017 Dkt.
Entry; July 17, 2017 Dkt. Entry.)

determined that their Sixth and Eight causes of action should not go forward.[4]  That same day,

Local 2 filed a Motion for Extension of Time to Move or Plead (Doc. 66).  Rather than disrupt

the briefing schedule and mooting the previously-filed Motions to Dismiss, the Court deferred

ruling on Plaintiffs' Motion until all responsive pleadings were filed.  (November 28, 2017 Dkt.

Entry.)  On December 6, 2017, Local 2 filed a Motion to Dismiss.  (Doc. 68.)  All motions are

now ripe.

## II.  LEGAL STANDARD

### A.  Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure

to state a claim upon which relief can be granted."  To withstand a motion to dismiss pursuant to

Rule 12(b)(6), a complaint must comply with the pleading requirements of Federal Rule of Civil

Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader

is entitled to relief."  *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009).  When considering a

motion to dismiss pursuant to Rule 12(b)(6), the Court must construe the complaint in a light

most favorable to the plaintiff and accept the factual allegations as true.  *Lambert v. Hartman*,

517 F.3d 433, 439 (6th Cir. 2008).  The Court "need not, however, accept conclusory allegations

or conclusions of law dressed up as facts."  *Erie Cty., Ohio v. Morton Salt, Inc.*, 702 F.3d 860,

867 (6th Cir. 2012).

## III.  ANALYSIS

All five Defendants move to dismiss the claims against them.  In so doing, the

Defendants raise many similar and overlapping arguments.  The Court will first consider the

---

[4] Although the claims were asserted against Local 2, Defendant Solid Platforms opposed Plaintiffs' Motion.  (Doc. 67.)

Union's Motion to Dismiss, followed by the motions filed by IKORCC, Local 2, Solid Platforms, and Dynegy. For the reasons that follow, the dismissal motions filed by the Union, IKORCC, Local 2, and Dynegy will be granted in part and denied in part, and the dismissal motion filed by Solid Platforms will be granted.

### A. Union's Motion to Dismiss (Doc. 45)[5]

Barger alleges four claims against the Union: violation of the LMRDA, conspiracy to violate the LMRDA, tortious interference with his employment relationship with Solid Platforms, and tortious interference with his employment relationship with ESS and other employers. The Union argues that all four of the claims asserted by Barger against it should be dismissed. The Union raises several arguments in support of its motion to dismiss: the agency allegations and ratification theories fail; the "speech" Barger engaged in is not protected speech under the LMRDA; and the conspiracy and tortious interference claims should be dismissed for failure to sufficiently plead supporting facts. For the reasons that follow, the Union's motion will be granted in part and denied in part.

### 1. Agency Allegations and Ratification

The Union argues that Plaintiffs do not plead allegations that establish an agency relationship or ratification of the underlying alleged misconduct, which is necessary to establish liability by the Union. *See Carbon Fuel Co. v. United Mine Workers*, 444 U.S. 212 (1979). Plaintiffs respond that they have pled facts to establish that the IKORCC and Local 2 acted as the Union's agents when they committed acts of retaliation. In support, Plaintiffs cite the following allegations:

---

[5] The Court notes that the Union attached nine exhibits it argues are "central" to Plaintiffs' claims relating to grievances and communications with the Union regarding grievances. The Court disagrees that these documents are central to Plaintiffs' claims and part of the pleadings for all purposes. Therefore, it will not consider them in ruling on the Motion to Dismiss.

- Dave Meier acted as a business agent for the Union. (Doc. 41 at PageID 362.)
- After Barger told Meier that if the Union was going to engage in this type of behavior, he did not want to be a part of it, Meier filed charges against Barger with the IKORCC. (*Id*.)
- IKORCC is an "affiliate and agent" of the Union and IKORCC "is responsible for adjudicating charges of the kind filed by Meier against [Barger]." (*Id*. at PageID 363.)

According to Plaintiffs, these allegations "create at least a reasonable inference of an agency relationship between these Defendants." (Doc. 52 at PageID 538.) The Court finds that at this early stage, and in deference to the liberal pleading standard of Rule 8, the facts pled are sufficient to allege that the IKORCC was an agent of the Union. However, it is not a particularly strong allegation and more facts will need to be developed to support the agency allegations – an issue the Court anticipates it will take up at summary judgment as more facts are developed.

However, the Court agrees with the Union that its failure to act on his appeal (*i.e.*, delayed ruling) and ultimate *granting* of his appeal does *not* support ratification. *Small v. International Bhd. of Elec. Workers*, 626 F. Supp. 96, 99 (S.D. Ohio 1985) (declining to impose liability on the international union for alleged ignoring and failing to respond to grievances and complaints.) *See also Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1289 (3d. Cir. 1991) ("Mere constructive knowledge of possible illegal activity on the local level is not sufficient to impose a duty to intervene on the International Union."); *Cloke v. Adams*, No. 1:09-cv-660, 2010 WL 3075183, at *3 (S.D. Ohio May 27, 2010), *report and recommendation adopted*, 2010 WL 3075180 (Aug. 4, 2010) (finding that union had no duty to intervene in the alleged misconduct directed at the plaintiff at the subordinate body level, *i.e.*, a scheme to suppress dissent and deny his free speech rights). Here, Plaintiffs allege that Dave Meier, a Union representative, filed charges against Barger with IKORCC after he complained about union members falsifying hours. (*Id*. at PageID 362.) Plaintiffs claim the Union "ratified

and approved" the actions of the IKORCC, an "affiliate and agent of the Union" by "wrongfully denying all [Barger's] grievances, and by deliberately failing to act on his appeal of the Council's decision." (*Id.* at PageID 363–64.) After failing to act on his appeal for months, the Union issued a ruling after this lawsuit was initiated, reversing the IKORCC's decision on "technical grounds." (*Id.* at 364.) Based on the authority above, the Court concludes that the denial of Barger's grievances that were part of his appeal do not support ratification.

## 2. LMRDA Protected "Speech"

The Union argues that Barger's "speech" is not protected under Section 101(a)(2) of the LMRDA, 29 U.S.C. § 411(a)(2) because it is not a matter of union concern. § 102(a)(2) states guarantees "freedom of speech and assembly," as follows:

> Every member of any labor organization shall have the right to meet and assemble freely with other members; <u>and to express any views, arguments, or opinions</u>; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

29 U.S.C. § 411(a)(2) (emphasis added). There is no dispute that "'the threshold inquiry in the LMRDA context is whether the speech at issue may be fairly characterized as a matter of *union* concern'—that is, whether the speech 'relates to the general interests of the union membership at large.'" *Trail v. Local 2850 UAW United Def. Workers of Am.,* 710 F.3d 541, 546 (4th Cir. 2013) (citing *Hylla v. Transp. Comm. Int'l Union,* 536 F.3d 911, 917 (8th Cir. 2008) (internal quotation marks omitted)).

Several Circuit Courts provide guidance on what constitutes a matter of "union concern." In *Trail v. Local 2850 UAW United Defense Workers of America*, the plaintiff alleged that her union violated the free speech provisions of the LMRDA by failing to support her in her employment dispute in retaliation for her reporting an incident in which she observed union officers viewing pornography on union computers in the union office on union time. *Id*. at 544, 547. The Court considered the "content, form, and context" of the plaintiff's statement and concluded that she did not speak on a matter of union concern when she reported the alleged pornography incident. *Id*. at 547. Plaintiff did not allege that she raised issues with respect to union policies, claim the conduct was illegal, or that she raised the concern at a union meeting, but rather through an informal grievance procedure. *Id*. at 547–48. Thus, the instance of minor misconduct by union officers was not sufficient concern to the union membership that her reporting it constituted speech protected by the LMRDA. *Id*. In so ruling, the Court held that § 101(a)(2) does not protect union member speech that is of only limited significance to the union. *Id*. at 547.

In *Hylla v. Transportation Communications International Union*, the Fourth Circuit held § 102(a)(2) protection is limited to speech that concerns the "general interests of the union membership at large." 536 F.3d at 917. There, the plaintiff claimed he was dismissed from his position for use of profanity and alleged threats. *Id*. at 913–14, 918–920. The Eight Circuit ruled that the plaintiff's speech was not of sufficient concern to union membership as a whole to come within the protection of the LMRDA. *Id*. at 920. It found that "[a]t the core, Hylla was removed because of his individualized insubordination. There was no union interest in allowing Hylla to conduct himself as he did. His dispute is purely personal in nature. It does not

implicate union interests nor did his termination threaten to chill [the union's] democratic governance." *Id.*

In *Kazolias v. IBEW LU 363*, the Second Circuit agreed with both *Hylla* and *Trail*, finding that Title I's protections are "limited to speech of significant concern to the union membership as a whole." 806 F.3d 45, 52 (2d Cir. 2015). There, three plaintiffs asserted that they were improperly denied job referrals by the union in retaliation for filing grievances with the union and complaints with the NLRB, EEOC, and federal court. The Second Circuit found the plaintiffs failed to state a viable claim under the LMRDA, because their complaints did not fall within the ambit of speech protected. *Id*. at 51. Although under certain circumstances, complaints about improper administration of the hiring hall can constitute speech that is protected from retaliation, "we do not think that every personal grievance premised on an allegation of an inappropriate job referral necessarily qualifies as protected speech under Title I." *Id*. at 52. In making complaints to the NLRB and EEOC, the plaintiffs sought redress for personal grievances, making no attempt to publicize their grievances among the membership in an effort to change union practice – *i.e.*, they only sought personal relief. *Id.*

At this stage, the Court finds that Barger has pled facts supporting a basis for potential liability under the LMRDA – that is, that Barger and his sister, members of the Union and Local 2, observed and discussed fellow Union members padding their hours. This was reported to multiple individuals, including the business agent for the Union, who, in turn, filed a grievance against Barger after Barger told him that if the Union was going to engage in this type of behavior (*i.e*., padding hours), he did not want to be a part of it (*i.e*., the Union). Discovery will reveal more about the content, form, and context of Barger's speech, so as to determine whether the speech is a matter of union concern protected by the LMRDA. As it stands, the facts pled

support the inference that Barger's speech goes beyond a one-off grievance about an idiosyncratic issue, but rather, concerns corruption in how Union members report their hours.

### 3. Conspiracy

Barger alleges that the Union, Local 2, and IKORCC conspired to violate the LMRDA. "To prevail on a claim of civil conspiracy, the plaintiff must establish: (1) a malicious combination; (2) involving two or more persons; (3) injury to persons or property; and (4) the existence of an unlawful act independent from the actual conspiracy." *Ruff v. Bakery, Confectionery, Tobacco Workers & Grain Millers & Indus. Int'l*, No. 2:14-CV-593, 2015 WL 586112, at *3 (S.D. Ohio Feb. 11, 2015) (citing *Lemaster v. Anchor Hocking LLC,* No. 2:11–CV–549, 2012 WL 3224094, at *4 (S.D. Ohio Aug. 6, 2012) (internal quotation marks omitted)). "A conspiracy cannot be made the subject of a civil action, however, unless there is an underlying unlawful act." *Blessing v. United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Indus. and Service Workers Int'l. Union*, 244 Fed. App'x 614, 622–23 (6th Cir. 2007).

The Union argues that if the LMRDA claim fails, so too must the conspiracy claim, which requires an underlying unlawful act. Because the LMRDA claim survives, the Court will not dismiss the conspiracy claim on this basis. The Union also contends that the conspiracy claim fails because it is not pled with specificity and because the agency allegations are conclusory.

In response, Barger alleges that his allegations are more than "threadbare." He points to the following: Plaintiffs have alleged that Meier and the IKORCC, as agents of the Union, illegally brought charges against Barger in retaliation for his statements concerning fraud being perpetrated by Union members. (Doc. 41 at PageID 362–63, ¶¶ 25–36.) The IKORCC deliberately failed to rule on Barger's appeal until this action was filed and ratified Local 2's

retaliatory refusal to assign him work by denying his grievances. (*Id*. at PageID 363–64, 38–42.) Solid Platforms's decision not to employ Barger was made my individuals who are members and agents of the Union in furtherance of efforts to retaliate against him for statements made about corruption and falsification of hours. (*Id*. at PageID 364, ¶ 45.) The Court finds that these allegations are sufficient to state a claim. Accordingly, the Court will deny the Union's motion to dismiss the conspiracy claim.

### 4. Tortious Interference

Lastly, the Union argues that Barger's third and fourth causes of action, tortious interference with employment relationship with Solid Platforms and ESS and other employers, respectively, should be dismissed because the agency allegations are insufficient and Barger does not allege that the Union took any direct action to interfere with his employment relationship with ESS. As will be discussed, *infra*, the tortious interference claims against Local 2 and IKORCC are properly dismissed. Given that the tortious interference claims are based on agency allegations and/or ratification, the Court agrees with the Union that there are insufficient facts pled to establish tortious interference claims against it, particularly in considering that the facts pled do not support a claim against either Local 2 or IKORCC. The tortious interference claims against the Union will therefore be dismissed.

In sum, the Union's Motion to Dismiss (Doc. 45) will be granted in part and denied in part. The LMRDA and conspiracy claims remain, but the tortious interference claims will be dismissed.

### B. IKORCC's Motion to Dismiss (Doc. 47)

The Court next turns to IKORCC's Motion to Dismiss. Barger asserts the same four claims against it as it does against the Union. In support of dismissal, IKORCC argues the Court

lacks jurisdiction, the LMRDA claim is moot, and if not, the speech alleged is not protected

under the law.  IKORCC also contends the conspiracy claim should fail because the LMRDA

claim is without merit.  Finally, the tortious interference claims fail for lacking essential elements

of the claim.  For the reasons that follow, IKORCC's motion will be granted in part and denied

in part.

### 1.  Jurisdiction

IKORCC argues that the Court lacks jurisdiction over this case because Barger failed to

plead a cause of action under 29 U.S.C. § 412, which states:

> Any person whose rights secured by the provisions of this subchapter have been
> infringed by any violation of this subchapter may bring a civil action in a district
> court of the United States for such relief (including injunctions) as may be
> appropriate.  Any such action against a labor organization shall be brought in the
> district court of the United States for the district where the alleged violation
> occurred, or where the principal office of such labor organization is located.

29 U.S.C. § 412.  Under the well-pleaded complaint rule, "federal jurisdiction exists only when a

federal question is presented on the face of the properly pleaded complaint."  *Caterpillar Inc. v.*

*Williams*, 482 U.S. 386, 392 (1987).  Plaintiffs' complaint seeks relief under the LMRDA, which

is a federal statute that confers the Court with subject matter jurisdiction.  In addition, the

Zimmer Power Station, where Plaintiffs worked, is located in Moscow, Clermont County, Ohio,

which is in the Southern District of Ohio.  The Court finds it is clear from the face of the

Complaint that federal jurisdiction exists.

### 2.  LMRDA

The IKORCC argues that Plaintiffs' LMRDA claim is moot, because the Union upheld

Plaintiff Barger's grievance on technical, not substantive, grounds, thereby vacating all of the

IKORCC's findings against Barger.  *See Pygatt v. Painters' Local No. 277, International Bhd. of*

*Painters & Allied Trades*, 763 F. Supp. 1301, 1309 (D.N.J. 1991) (finding no controversy where the international union dismissed fines and readmitted them as new members). In response, Barger argues that the fact that his appeal was granted does not render his retaliation claim moot, as the IKORCC prosecuted him in retaliation for his protected speech and imposed fees and penalties against him for almost a year before finally granting an appeal. Thus, although the appeal reverses the penalties levied against him, it does not moot his claims. *Patramale v. Local No. 17 of Laborers' Int'l Union*, 557 F. Supp. 490, 492 (S.D.N.Y. 1983) (rejecting argument that LMRDA case was mooted by subsequent rescission of suspension and fine imposed on union member for statements critical of union). In response, the IKORCC states that the Plaintiffs did not plead a cause of action under 29 U.S.C. § 412 against it, and that it is "only arguing that the instant Plaintiffs' Complaint is moot because of how the Third Amended Complaint was pleaded." (Doc. 63 at PageID 603.) The Court disagrees, and finds that Plaintiffs have sufficiently pled facts that support an LMRDA claim and harm beyond the fines imposed and subsequently rescinded.

Like the Union, IKORCC also argues that Barger's "speech" is not the type of speech that is protected by Section 101(a)(2) of the LMRDA. IKORCC argues that Barger's complaints were of idiosyncratic concern and not raised at a union meeting or assembly of members, nor did the complaints relate to the core purpose of protecting union democracy, which is what Congress intended when it enacted Section 101(a)(2). For the reasons the Court rejected these arguments when presented by the Union, it will also reject them by IKORCC.

### 3. Conspiracy

IKORCC argues that the conspiracy claim should fail if the LMRDA claim fails. Because the LMRDA claim is viable, so too is the conspiracy claim.

### 4. Tortious Interference with Solid Platforms

IKORCC argues that there can be no tortious interference with Barger's employment relationship with Solid Platforms claim because Barger was on layoff from Solid Platforms at the time of the events giving rise to the Third Amended Complaint. In addition, Barger alleges in conclusory fashion that Solid Platforms was induced by malicious acts of a third person.

In order to establish a tortious interference with an employment relationship claim, a plaintiff must demonstrate: (1) the existence of an employment relationship between plaintiff and the employer; (2) the defendant was aware of the relationship; (3) the defendant intentionally interfered with this relationship; and (4) the plaintiff was injured as a proximate result of the defendant's acts. *Slyman v. Shipman, Dixon & Livingston, Co., L.P.A.*, No. 2008-CA-35, 2009 WL 2489333, at *2 (Ohio Ct. App. Aug., 14, 2009) (citing *Lennon v. Cuyahoga Cty. Juvenile Court*, No. 86651, 2006 WL 1428920, at *5 (Ohio Ct. App. 2006)). To succeed on a claim for interference with an employment relationship, as in this case, the plaintiff must also establish "wanton or malicious behavior." *Peters v. Monroe Tp. Bd. of Tr.*, No. 2:11-cv-00083, 2011 WL 3652719, at *5 (S.D. Ohio Aug. 18, 2011) (citing *Dryden v. Cincinnati Bell Tel. Co.*, 135 Ohio App. 3d 394, 400, 734 N.E.2d 409 (Ohio Ct. App. 1999)). Furthermore, the right of noninterference in an employment relationship is limited, such that the tort only extends to "outsiders" to the employment relationship who maliciously interfere. *Id*.

Barger argues that his tortious interference claim is viable because he, along with other employees, were on a "temporary layoff" from Solid Platforms at the time the retaliation occurred. (Doc. 41 at PageID 362, ¶ 21.) IKORCC also argues that Barger failed to allege sufficient facts to demonstrate maliciousness by a third person. In its reply brief, IKORCC contends that the Third Amended Complaint does not allege that the IKORCC was an "outsider"

because Solid Platforms's decision not to employ Barger was made by individuals who were members and agents of Local 2 and the Union. IKORCC asserts that even if true, those individuals were *still employees of Solid Platforms* and thus not "outsiders," regardless of whether their actions were malicious. *See Anderson v. Minter*, 291 N.E.2d 457, 461 (Ohio 1972). Barger's only response to this argument is that IKORCC did not challenge any essential element to this cause of action.

The Court finds the lack of facts supporting that the interference was by an "outsider" to the employment relationship (to the extent one existed) is dispositive. Barger cannot have it both ways. The interference with Barger's employment relationship with Solid Platforms was made by individuals of Local 2 and the Union, who were employees of Solid Platforms. Those individuals necessarily cannot be "outsiders" to Barger's employment relationship with Solid Platforms. On this basis, the tortious interference claim is properly dismissed.[6]

### 5. Tortious Interference with ESS and Other Employers

IKORCC argues that Barger's claim alleging tortious interference with Barger's employment relationship with ESS and other prospective employers fails as he has not alleged facts to support that IKORCC was aware of the employment relationship. Barger does not allege that IKORCC had knowledge of his employment with ESS. Barger responds that the labor organizations in this case are closely-related entities and all three had knowledge of, in varying ways, the other retaliatory actions levied against Barger. Barger alleges in the Third Amended Complaint that "Solid Platforms, Local 2, and Dynegy" had knowledge of his employment with ESS, and acted intentionally to cause him to lose it, but does not allege that IKORCC had

---

[6] The Court notes that it also has concerns about the viability of the claim given that Barger does not allege to be an employee at the time the interference occurred.

knowledge of that employment. (Doc. 41 at PageID 365, ¶ 52). The Court rejects Barger's argument that an inference that IKORCC had knowledge of his relationship with ESS and that discovery should be conducted to determine whether this "reasonable inference" can ultimately be proved. As IKORCC notes, Plaintiffs have had many opportunities to amend the Complaint. The allegation of knowledge by IKORCC is lacking. Accordingly, the tortious interference claim with ESS and other employers by IKORCC is dismissed.

Therefore, for the reasons set forth therein, IKORCC's Motion to Dismiss (Doc. 47) is granted in part and denied in part. The LMRDA and conspiracy claims survive, but the tortious interference claims do not.

### C. Local 2's Motion to Dismiss (Doc. 68)

Barger's Third Amended Complaint asserts seven claims against Local 2, two of which Plaintiffs have asked the Court permission to withdraw. (Doc. 65.) Barger alleges violation of the LMRDA, conspiracy to violate the LMRDA, tortious interference with Barger's employment relationship with Solid Platforms, and tortious interference with his employment relationship with ESS and other employers. Nealan alleges violation of the LMRDA, tortious interference with her employment relationship with Solid Platforms, and violation of the LMRDA based on retaliation against due to her brother's exercise of rights under the LMRDA.

As an initial matter, in their Motion for Leave to File Their Fourth Amended Complaint for the Purpose of Withdrawing Two Claims, Plaintiffs seek leave to withdraw Claims Six and Eight, the two LMRDA claims asserted by Nealan against Local 2. (Doc. 65.) Plaintiffs assert that after good faith investigation of information shared with their counsel by counsel for Local 2, they have determined that in the interests of judicial economy, these two claims should not proceed. The Court agrees. The Court will grant Plaintiffs' Motion to withdrawn Counts Six

and Eight, and as such, will not consider the merit arguments for dismissal of these claims raised

by Local 2 in its Motion to Dismiss.[7]

The Court will now turn to the merits of Local 2's Motion to Dismiss the remaining five

claims against it.  Moving to dismiss Barger's claims, Local 2 argues that Third Amended

Complaint lacks facts to support agency or ratification of decisions by Local 2, Barger's speech

is not protected by the LMRDA, the conspiracy claim fails because the LMRDA claim fails, and

there are no facts to support tortious interference.  Local 2 argues the tortious interference claim

by Nealan should be dismissed for failure to state a claim.  For the reasons that follow, Local 2's

Motion to Dismiss will be granted in part and denied in part.

## 1. LMRDA

Local 2 argues that the Barger's LMRDA claim fails because Plaintiff has not alleged

that Local 2's membership authorized or ratified the action by a member who filed an internal

charge against Barger.  In support of its position that Local 2 was acting as an agent of the

Union, Barger cites the following:

- A member of Local 2, business agent for the Union, Dave Meier, investigated the charges against Barger.  (Doc. 41 at PageID 362, ¶¶ 25–27.)
- Local 2's Vice President, Art Galea, was one of those Barger identified as engaging in fraudulent activities. (*Id*. at PageID 362, ¶ 23.)
- Agents of Local 2 caused Solid Platforms to cease to employ Barger and Nealan.  (*Id*. at PageID 364–65, ¶¶ 44–46.)

As Local 2 points out, the Third Amended Complaint identifies Art Galea as a "union

officer," not a Vice President of Local 2.  Union – the proper noun – is defined as Defendant

United Brotherhood of Carpenters and Joiners of America.  (Doc. 41 at PageID 360, ¶ 1.)  Thus,

it is ambiguous from the Third Amended Complaint whether Galea is a "union" officer of Local

---

[7] Plaintiffs need not file a Fourth Amended Complaint.  Counts Six and Eight are dismissed without prejudice.
Local 2's Unopposed Motion for Extension of Time to Move or Plead (Doc. 66) is denied as moot.

2, or Union officer, as it could be reasonably read either way. Local 2 also argues that alleged interference with Barger and Nealan's employment falls under the tortious interference claim, not the LMRDA claim.

However, at this stage, the Court finds that the allegation that Dave Meier, who brought and investigated the charges against Barger as both a business agent of the Union and member of Local 2, was acting as an agent of the Union sufficient to establish an allegation of agency. Although it is a weak allegation, and more artful pleading would have aided the inference, the Court will allow the claim to proceed.

As to the substance of the LMRDA claim, Local 2 argues that the claim itself is without merit because Barger complained of an idiosyncratic concern akin to a personal complaint, not one that relates to general membership of the Union. *See Trail*, 710 F.3d 541 (4th Cir. 2013); *Hylla*, 536 F.3d 911 (8th Cir. 2008). The Court has rejected this argument, as outlined above, and applies this same analysis to Local 2's Motion to Dismiss. Accordingly, the LMRDA claim proceeds.

### 2. Conspiracy

Local 2 argues that Barger's civil conspiracy claim falls with its LMRDA claim, and, alternatively, that even if the LMRDA claim survives, the conspiracy claim is not pled with specificity. Barger offers no argument in response. The Court will not supply its own defense of Barger's conspiracy allegations. Accordingly, the conspiracy claim against Local 2 is dismissed.

### 3. Tortious Interference with Employment with Solid Platforms

Like IKORCC, Local 2 argues that Barger failed to plead tortious interference with his employment with Solid Platforms, because Barger was on a layoff from Solid Platforms and not working at the time of the events pled in the Third Amended Complaint. Alternatively, the

individuals who made the decision not to employ Barger were not "outsiders" to the employment relationship. Plaintiff's roundabout argument in response does not adequately address this argument:

> The fact that the agents of Local 2 who caused Solid Platforms to cease to employ Mr. Barger happened also to be employees of Solid Platforms does not make Local 2 an "insider" to the Barger/Solid Platforms employment relationship. According to the [Third Amended Complaint], the agents of Local 2 were acting on behalf of Local 2 when they deliberately caused Mr. Barger to lose his job with Solid Platforms.

(Doc. 70 at PageID 665.) The Court agrees with Local 2 that this claim is properly dismissed on the basis set forth, *supra*, in ruling on IKORCC's objection to this claim. This claim is, therefore, dismissed.

### 4. Tortious Interference with ESS and Other Employers

Local 2 argues that Barger's tortious interference with ESS claim does not allege facts to support that it had knowledge of Barger's employment with ESS. Barger alleges that "Defendants Solid Platforms, Local 2, and Dynegy had knowledge of Jonathan's employment with ESS, and acted intentionally to cause him to lose it." (Doc. 41 at PageID 365, ¶ 52.) Barger alleges that Local 2's members and agents acted through Solid Platforms. (*Id*. at PageID ¶ 45.) The Court agrees with Local 2 – the Third Amended Complaint lacks specific facts to support *what* Defendants did to tortiously interfere and knowledge of Barger's relationship with ESS, so as to demonstrate that it acted *intentionally*. Right now, the allegations are speculative and inferential. This is not enough. The claim, therefore, will be dismissed.

### 5. Tortious Interference with Nealan's Employment Relationship with Solid Platforms

The Third Amended Complaint alleges that Nealan had performed work for Solid Platforms, through Local 2, for eight or nine years. Yet, immediately after her brother reporting

the alleged fraudulent activity, Solid Platforms laid her off, and she has not been permitted to return.  (Doc. 41 at PageID 366, ¶¶ 56–61.)  Nealan has been offered "very little work" since November 2015, and although she was offered work for Solid Platforms in April 2017, when she arrived for orientation, she was informed she could not work for Solid Platforms because she was on a "do not hire list."  (*Id.* at ¶¶ 59–61.)

 Local 2 argues that Nealan's allegations fail to state a claim, and the National Labor Relations Act preempts a state cause of action based on discriminatory use of a referral system. In response, Nealan cites the Complaint allegations above and argues that they "clearly state a cause of action."  (Doc. 70 at PageID 666.)  The Court disagrees.  Nealan does not identify any facts through which Local 2 acted to intentionally deprive Nealan of employment with Solid Platforms.  And as discussed, *supra*, the intentional interference must be by an outsider to the employment relationship – *i.e.*, by Local 2, rather than Solid Platforms.  Yet, here, no such allegations are pled.  This claim must be dismissed.

Accordingly, for the reasons set forth herein, Local 2's Motion to Dismiss is granted in part and denied in part.  The LMRDA claim survives, but the conspiracy and tortious interference claims do not.

### D.  Dynegy's Motion to Dismiss (Doc. 43)

Barger asserts only one cause of action against Dynegy: tortious interference with his employment relationship with ESS.  Dynegy argues this claim should be dismissed for failure to plead sufficient facts to support it.  Dynegy's Motion to Dismiss will be denied, but the Court agrees that the claim should be narrowed to remove "other prospective employers."

## 1. Tortious Interference

Dynegy argues that Barger's tortious interference claim must be dismissed for failure to plead facts to support the claim that it had knowledge of Barger's employment relationship with ESS and intentionally interfered with his relationship with ESS or other prospective employers.[8] Specifically, Dynegy argues that Barger's claim fails because he has not alleged that Dynegy made the decision to deny him access to its property at a time when it was aware of his employment with ESS.

Barger responds that he has alleged facts to support all four elements of tortious interference. He alleges he obtained a job with ESS in late November 2015, identified himself as an employee of ESS and sought admission to the Zimmer site to perform his work for ESS, but a representative of Dynegy refused to allow him to enter. Subsequently, Joe Lind, a Dynegy manager, confirmed Barger was not allowed to enter Zimmer "because of Solid Platforms." (Doc. 41 at PageID 365, ¶¶ 47–53.) Dynegy argues that Barger did not plead that Dynegy made the decision to deny him access to its property when it was aware of his employment with ESS. Barger contends that the timing of Dynegy's knowledge of Barger's employment is irrelevant, because the facts pled establish that Dynegy made a decision to interfere with any employment Barger obtained that would require him to work at the Zimmer plant. Thus, Dynegy decided, before Barger arrived, that it was going to stop him from working for any employer that assigned him to work at Zimmer. When Barger arrived to work and identified himself as an ESS employee, Dynegy made the decision, with knowledge of his employment relationship with ESS,

---

[8] To refresh the reader's memory, the elements of a tortious interference with employment relationship claim are: (1) the existence of an employment relationship between plaintiff and the employer; (2) the defendant was aware of the relationship; (3) the defendant intentionally interfered with this relationship; and (4) the plaintiff was injured as a proximate result of the defendant's acts. *Slyman*, 2009 WL 2489333, at *2.

to interfere with that employment relationship by denying him entry.  The Court agrees with Barger that this is sufficient to state a claim.

However, the Court agrees with Dynegy that Barger's allegation that Dynegy interfered with his employment relationship with "other prospective employers" should be dismissed because Barger has not alleged the identities of those other employers.  Barger obviously cannot contend that Dynegy knew of and intentionally interfered with employers who have yet to be identified.   Barger did not respond to this argument.  Thus, no claim may be pled against a speculative "other prospective employers."

Accordingly, Dynegy's motion is denied, but the tortious interference claim is narrowed to only tortious interference with Barger's employment relationship with ESS.

### E.  Solid Platforms's Motion to Dismiss (Doc. 46)

Barger asserts three claims against Solid Platforms: a claim of wrongful discharge in violation of public policy and two tortious interference claims.  Solid Platforms moves to dismiss the former on the basis that Barger is not an "at will" employee, and the latter on the basis that Barger has failed to adequately plead facts to support his claims.  For the reasons that follow, Solid Platforms's Motion to Dismiss will be granted.

### 1.  Wrongful Discharge

Solid Platforms argues that Barger's claim of wrongful discharge in violation of Ohio public policy fails because he was not an employee-at-will, as required by Ohio law under *Greeley v. Miami Valley Maintenance Contractors*, 49 Ohio St. 3d 228, 551 N.E.2d 981 (Ohio 1990).  As a member of a union, Barger's employment was limited to the terms of his Collective Bargaining Agreement – which Solid Platforms contends limits its ability to terminate his employment.

As set forth by the Ohio Supreme Court:

> *Greeley* provides an exception to the *employment-at-will* doctrine. Thus, as stated above, in order for an employee to bring a cause of action pursuant to *Greeley, supra,* that employee must have been an employee at will. The identifying characteristic of an employment-at-will relationship is that either the employer or the employee may terminate the employment relationship for any reason which is not contrary to law. *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150; *Boggs v. Avon Products, Inc.* (1990), 56 Ohio App. 3d 67, 564 N.E.2d 1128. Haynes clearly does not qualify as an employee at will. As a member of a union, the terms of her employment relationship were governed by a collective bargaining agreement. That agreement specifically limited the power of the zoo to terminate Haynes and, as a result, took her outside the context of employment at will. Because she was not an employee at will, she is outside the class of employees for whom *Greeley* provides protection.

*Haynes v. Zoological Soc. of Cincinnati*, 73 Ohio St. 3d 254, 258, 652 N.E.2d 948, 951 (1995);

*Williams v. United Steel Workers of Am., AFL-CIO, Local 7697,* No. 1:09-cv-743, 2010 WL 909883, at *6 (S.D. Ohio Mar. 10, 2010) (dismissing wrongful termination claim because employee was a member of a union whose employment was governed by a collective bargaining agreement). According to Solid Platforms, Barger admits in ¶ 1 of the Third Amended Complaint that he is a member of the Union and Local 2. (Doc. 41 at PageID 360, ¶ 1.) This, on its face, precludes a *Greeley* cause of action.

Barger argues that despite being a union member, his employment relationship with Solid Platforms is nonetheless "at will" because he alleges that "Solid Platforms was not required by any collective bargaining agreement to have 'cause' to terminate [his] employment, and no grievance procedure was available to [him] in the event of such a termination." (*Id*. at ¶ 8.) This allegation establishes that his employment was instead "at will" and could be terminated at any time, for any reason. (*Id*. at ¶ 9.) His position is that *Haynes* does not stand for the proposition that an employee union member may not bring a *Greeley* cause of action. Rather, *Haynes*

requires the Court to inquire into the specific contents of the collective bargaining agreement to determine whether it limits the right of the employer to terminate at will.[9]

Both parties turn to the substance of the Collective Bargaining Agreement to argue for – and against – application of the "at will" employment doctrine.[10] Solid Platforms argues that a progressive discipline policy over misuse of cell phones and communication devices clearly establishes that Barger's employment was not "at will" as its right, as employer, to terminate him was not for any reason, but constrained by the parties' contractual agreement. (*See* Doc. 46-1 at PageID 485, ¶ 83) ("The abuse or misuse of the above-stated devices will be cause for one (1) verbal and (1) written reprimand and a third (31d) occurrence shall be cause for dismissal.")) In contrast, Barger cites a provision of the Collective Bargaining Agreement stating that the employer is at liberty to employ and discharge whomever he sees fit. (*Id*. at PageID 474) ("The Employer is at liberty to employ and discharge whomsoever he sees fit.") Barger also argues there is no grievance procedure for employees who are discharged without just cause, and no provision requiring an employer to have cause to terminate an employee.[11]

---

[9] Barger also argues that this Court's ruling in *Williams* supports his position, despite the fact that the Court dismissed the plaintiff's wrongful termination claim because the plaintiff was a union member. 2010 WL 909883 at *6. He argues that this Court's subsequent order granting summary judgment and denying as moot a motion to strike, issued, of course, *after* its dismissal order, demonstrates that the Court *did* inquire into the specific contents of the collective bargaining agreement and established that the collective bargaining agreement at issue gave the employer the exclusive right to discipline and discharge employees for proper cause. *Williams*, 1:09-cv-743, 2011 WL 2135179 (S.D. Ohio May 27, 2011) (granting summary judgment), *aff'd,* 487 Fed. App'x 272 (6th Cir. 2012). This argument is unavailing. Not only does a far different standard apply to dismissal motions than to summary judgment motions, but there is also no evidence the Court considered the substance of the collective bargaining agreement at the motion to dismiss stage, prior to its summary judgment ruling. Rather, the Court's dismissal order was based on the factual allegations derived from the amended complaint. 2010 WL 909883, at *1. The dismissal order stands alone, and subsequent history does not bolster Barger's position here.

[10] Solid Platforms attached the Collective Bargaining Agreement to its Motion to Dismiss, which is incorporated by reference. (Doc. 46-1.) The Court will consider it without converting the Motion into one for summary judgment.

[11] However, the parties disagree on this point.

Barger does not cite any case in which the Court allowed a *Greeley* claim to go forward *despite* the employment relationship being governed by a collective bargaining agreement, as here. Rather, the cases establish that courts routinely dismiss wrongful discharge claims under Ohio law where the employment relationship is governed by a collective bargaining agreement, which necessarily limits the employer's ability to terminate the employment relationship. Accordingly, because Barger is a member of a Union whose employment relationship is governed by the terms of a Collective Bargaining Agreement, which limits the rights of his employer to terminate him for any reason, no *Greeley* claim may be asserted. *Staunch v. Continental Airlines, Inc.*, 511 F.3d 625, 632 (6th Cir. 2008) (dismissing wrongful discharge claim under Ohio law because employee was employed pursuant to the terms of a collective bargaining agreement) (collecting cases). Moreover, the Court finds its ruling to be in line with public policy: the equities of an employment relationship governed by a bargained-for contract stand in stark contrast to those of an individual, unrepresented by a union. The claim, therefore, is dismissed.

### 2. Tortious Interference with ESS

Barger alleges that Solid Platforms tortiously interfered with his employment relationship with ESS and other prospective employers by causing him to be barred from working at Zimmer. As previously noted, the elements of a tortious interference cause of action are: (1) the existence of an employment relationship between plaintiff and the employer; (2) the defendant was aware of the relationship; (3) the defendant intentionally interfered with this relationship; and (4) the plaintiff was injured as a proximate result of the defendant's acts. *Slyman,* 2009 WL 2489333, at *2. To succeed on a claim for interference with an employment relationship, as in this case, the plaintiff must also establish "wanton or malicious behavior." *Peters*, 2011 WL 3652719, at *5–7

(granting motion to dismiss where plaintiffs failed to plead sufficient facts to infer the defendant's actions were malicious or wanton).

In support of his claim, Barger alleges that he worked for Solid Platforms at Zimmer, and while on layoff, informed Dynegy about alleged overbilling by Solid Platforms.  (Doc. 41 at PageID 362, ¶¶ 21–24.) After the alleged retaliation by Local 2, the Union, and IKORCC, Barger obtained a job with another employer, ESS, which assigned him to work at Zimmer.  (*Id*. at PageID 365, ¶ 46–48.)  Yet, when Barger arrived to work at Zimmer and identified himself as an employee of ESS, a representative of Dynegy refused to allow him to enter.  Subsequently, Joe Lind, an employee of ESS, confirmed Barger was denied entry "because of Solid Platforms." (*Id*. at ¶¶ 50–51.)  Barger claims that Solid Platforms had knowledge of his employment with ESS and caused him to lose it.  (*Id*. at ¶ 52.) The following year, Lind conveyed that Barger was still barred from Zimmer "because of Solid Platforms."  (*Id*. at ¶53.)

In moving to dismiss this claim, Solid Platforms argues Barger has not alleged intentional, as opposed to negligent, interference.  He has not alleged sufficient facts to show that Solid Platforms, as opposed to an unnamed representative of Dynegy, was aware Barger would be working for ESS.  Barger does not allege any facts that establish that Solid Platforms took any action, let alone malicious or wanton action, to intentionally influence Dynegy's decision to bar him from the Zimmer Station.  *Peters*, 2011 WL 3652719, at *6–7. Absent from the Complaint is any allegation that Solid Platforms acted, intentionally or otherwise, to deny him access to the Zimmer Station during his employment with ESS.

The Court agrees with Solid Platforms.  The Complaint allegations do not set forth more than speculation that perhaps Solid Platforms could have influenced Dynegy's decision to bar Barger from its worksite.  As this is an intentional tort, more is required.  Barger does not set

forth specific action by Solid Platforms, let alone conduct that could rise to the level of malicious or wanton conduct, as required under Ohio law. Accordingly, finding this claim too speculative, it is, therefore, dismissed.

### 3. Nealan's Claims

Solid Platforms also argues that Nelean has failed to state a claim of tortious interference against it, to which Plaintiffs do not respond. The Court does not read the Third Amended Complaint as Nealan having asserted a claim against Solid Platforms. Yet to the extent Solid Platforms would so argue, no such claim may lie, as its opportunity to respond in defense has passed.

In sum, therefore, Solid Platforms's Motion to Dismiss (Doc. 46) is granted.

## IV. CONCLUSION

For the reasons discussed herein, the following Defendants' Motions to Dismiss are **GRANTED IN PART AND DENIED IN PART**: the Union (Doc. 45), IKORCC (Doc. 47), Local 2 (Doc. 68), and Dynegy (Doc. 43). Defendant Solid Platforms's Motion to Dismiss (Doc. 46) is **GRANTED**. Plaintiffs' Motion to Withdraw (Doc. 65) is **GRANTED**; Local 2's Motion for Extension of Time (Doc. 66) is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

S/Susan J. Dlott_____
Judge Susan J. Dlott
United States District Court